UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

JADER ORLANDO ORDONEZ-MENDEZ, Petitioner,

v. Civil Action No. 3:26-cv-00513-RGJ

JEFF TINDALL, et al., Respondents.

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on the Petition for Writ of Habeas Corpus [DE 1] and motion for expedited consideration [DE 10] filed by *pro se* Petitioner Jader Orlando Ordonez-Mendez ("Petitioner"). The United States as counsel for the Federal Respondents ("Respondents")[1] responded [DE 5], and Petitioner replied [DE 7]. This matter is ripe. For the reasons below, Petitioner's Petition for Writ of Habeas Corpus [DE 1] is **GRANTED** and Petitioner's motion for expedited consideration [DE 10] is **GRANTED**.

## I. BACKGROUND

Petitioner is a native and citizen of Columbia. [DE 5 at 20]. He entered the United States "near Eagle Pass, TX on or about August 25, 2024." [*Id.*]. Shortly thereafter, Petitioner was arrested by border patrol agents. [*Id.*]. Petitioner was placed in expedited removal proceedings pursuant to 8 U.S.C. § 1225(b)(1), and he was paroled from August 26, 2024, to September 4, 2024. [*Id.*; DE 5-2 at 34 (indicating Petitioner was inadmissible under 8 U.S.C. § 1182(a)(7)(A)(i)(I) as "an immigrant not in possession of [valid entry documentation]")].

An asylum officer provided Petitioner with a credible fear interview and made a positive

[1] 28 U.S.C. § 517 allows the Office of the United States Attorney to make appearances in court to attend to the United States' interests. Respondents submitted responses in this case to attend "to the United States' interests to the extent that the petition also names a county official as a respondent." [DE 5 at 19 n.1].

credible fear finding, and Petitioner applied for asylum. [DE 5 at 20; DE 1 at 7; DE 7 at 51]. Petitioner was issued a Notice to Appear [DE 5-4] in person with a hearing scheduled for September 22, 2026. [DE 7 at 51-52]. Because Petitioner was not re-detained when he was given the Notice to Appear in person, his "perception was that [his] parole had been extended to September 22[], 2026," and he has lived in Shelbyville, Kentucky since he was initially paroled. [*Id.*]. Respondents do not indicate whether Petitioner was paroled after his Notice to Appear or whether that parole was terminated.

On May 12, 2026, Petitioner was arrested in Shelby County, Kentucky for "No Operators/Moped License." [DE 5-5 at 45]. The administrative arrest warrant dated May 12, 2026, ordered Petitioner's arrest "pursuant to section[] 236 of the Immigration and Nationality Act[.]" [DE 5-6 at 47]. Petitioner indicated on his Notice of Custody Determination that he "request[s] an immigration judge review of this custody determination." [*Id.*]. However, Petitioner has not received a custody redetermination hearing. [DE 1 at 6]. Petitioner is detained at the Oldham County Jail in La Grange, Kentucky. [*Id.* at 1].

## II. DISCUSSION

### A. Immigration and Nationality Act

In his Petition, Petitioner asserts that his prolonged detention without an individualized bond hearing violates due process. [DE 1 at 6]. Respondents argue that Petitioner is an "applicant for admission" detained under the mandatory detention provisions in 8 U.S.C. § 1225(b)(1)(B)(ii). [DE 5 at 21]. According to Respondents,

> 8 U.S.C. § 1225(b)(1)(B)(ii) requires detention of aliens that were subject to expedited removal proceedings but were then found by an asylum officer to have a credible fear of persecution in their home country and placed into full proceedings before the Immigration Court, such as Petitioner.

[*Id.*]. Respondents therefore conclude that Petitioner has not been deprived of due process because he "is receiving the process Congress provided, including notice of the relevant charges of removability, a hearing before an immigration judge, and the opportunity to appeal the immigration judge's decision." [*Id.* at 23].

Respondent's same arguments were considered and rejected by this Court in *Singh v. Hott*, No. 4:26-CV-256-DJH, 2026 WL 1880217, at *4 (W.D. Ky. June 30, 2026) (concluding that the petitioner was "detained under § 1226(a), not § 1225(b)(1)(B)(ii), because an officer finished considering his asylum application" when petitioner was placed into standard removal proceedings before an immigration judge). Although not binding, the Court finds the analysis in *Singh* to be persuasive. Accordingly, consistent with *Singh*'s reasoning and with this Court's prior opinion in *Kumar v. Lewis, et al.*, No. 4:26-cv-470-RGJ, 2026 WL 3120731 (W.D. Ky. Oct. 19, 2026), the Court finds that § 1226, rather than § 1225, governs Petitioner's detention.

Relevant here, Section 1225(b)(1) governs "[i]nspection of aliens arriving in the United States and certain other aliens who have not been admitted or paroled." § 1225(b)(1). "Section 1225(b) requires mandatory detention" for noncitizens subject to expedited removal under § 1225(b)(1). *Rodriguez-Acurio v. Almodovar*, 811 F. Supp. 3d 274, 293 (E.D.N.Y. 2025). The statute states in relevant part:

> (A) Screening
>
> (i) In general
>
> If an immigration officer determines that an alien ... who is arriving in the United States or is described in clause (iii) is inadmissible under section 1182(a)(6)(C) or 1182(a)(7) of this title, the officer shall order the alien removed from the United States without further hearing or review unless the alien indicates either an intention to apply for asylum ... or a fear of persecution.
>
> (ii) Claims for asylum

> If an immigration officer determines that an alien ... who is arriving in the United States or is described in clause (iii) is inadmissible under section 1182(a)(6)(C) or 1182(a)(7) of this title and the alien indicates either an intention to apply for asylum under section 1158 of this title or a fear of persecution, the officer shall refer the alien for an interview by an asylum officer.

§ 1225(b)(1)(A)(i)–(ii). Thus, "[a]pplicants can avoid expedited removal by claiming asylum." *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 109 (2020). "The point of th[e] screening interview is to determine whether the applicant has a 'credible fear of persecution.'" *Id.* (quoting § 1225(b)(1)(B)(v)). "The applicant need not show that he or she is in fact eligible for asylum—a 'credible fear' equates to only a 'significant possibility' that the alien would be eligible." *Id.* (emphasis omitted) (quoting § 1225(b)(1)(B)(v)).

Section 1225(b)(1)(B)(ii) provides that if an asylum officer "determines at the time of the [credible-fear] interview that an alien has a credible fear of persecution . . . , the alien shall be detained for further consideration of the application for asylum." § 1225(b)(1)(B)(ii). "The plain meaning of [that provision] is that detention must continue until immigration officers have finished 'consider[ing]' the application for asylum."[2] *Jennings v. Rodriguez*, 583 U.S. 281, 299 (2018) (second alteration in original) (discussing §§ 1225(b)(1)(B)(ii), (b)(2)(A)). Once consideration of the asylum application ends, "detention under § 1225(b) must end as well." *Id.* at 297. Pursuant to accompanying regulations, upon an asylum officer's finding of credible fear, U.S. Citizenship and Immigration Services ("USCIS") "has complete discretion to either issue a Form I-862, Notice to Appear, for full consideration of the asylum . . . claim in [standard removal] proceedings under [8 U.S.C. § 1229a], or retain jurisdiction over the application for asylum pursuant to [8 C.F.R.]

---

[2] Although § 1225(b)(1)(B) refers to a credible-fear finding by an asylum officer, *see* § 1225(b)(1)(B)(i)–(ii), and distinguishes immigration officers from asylum officers, *see* § 1225(b)(1)(A)(i)–(ii), the *Jennings* opinion refers to asylum officers as immigration officers for purposes of § 1225(b)(1)(B)(ii). *See* 583 U.S. at 299.

§ 208.2(a)(1)(ii) for further consideration in a hearing pursuant to [8 C.F.R.] § 208.9." 8 C.F.R. § 208.30(f); *see Thuraissigiam*, 591 U.S. at 110 (discussing 8 C.F.R. § 208.30(f)). In a standard removal hearing, an immigration judge considers the noncitizen's asylum application. *See Thuraissigiam*, 591 U.S. at 110. But pursuant to 8 C.F.R. § 208.9, an asylum officer may further consider the asylum application via an interview and issue a decision. *See* 8 C.F.R. § 208.9(b), (d); *see also* 8 C.F.R. § 208.14(b)–(c) (providing authority for asylum officer to grant or deny asylum applications).

Here, Petitioner received a credible fear interview before an asylum officer, the asylum officer found that Petitioner had a credible fear of persecution, and Petitioner was then "placed into standard removal proceedings" pursuant to 8 C.F.R. § 208.30(f) and ordered "to appear before an immigration judge[.]" [DE 5 at 20; DE 5-4 at 39]. Petitioner was mandatorily detained under 8 U.S.C. § 1225(b)(1)(B)(ii) until the "the officer's consideration of [his] asylum application concluded because [Petitioner] was placed in standard removal proceedings before an immigration judge." *Singh*, 2026 WL 1880217, at *3. By issuing a Notice to Appear and placing Petitioner in standard removal proceedings, USCIS thereby declined to "retain jurisdiction over the application for asylum pursuant to § 208.2(a)(1)(ii) *for further consideration* in a hearing pursuant to § 208.9." 8 C.F.R. § 208.30(f) (emphasis added). This decision means that Petitioner's "detention under § 1225(b) must end as well." *Jennings*, 583 U.S. at 299. And as even further evidence that Petitioner is not detained under § 1225(b), the administrative arrest warrant indicated that Petitioner's arrest was authorized by 8 U.S.C. § 1226. [*See* DE 5-6 at 47 (authorizing arrest "pursuant to section[] 236 of the Immigration and Nationality Act," codified at 8 U.S.C. § 1226)].

Although Petitioner's asylum application technically remains under consideration, [DE 10 at 63 ("[Petitioner] ha[s] a pending individual hearing in regards to [his] asylum and withholding

of removal on November 9, 2026.")], § 1225(b)(1)(B)(ii) does not suggest that an immigration judge constitutes an "immigration officer" who "consider[s]" Petitioner's application under that provision. *See Jennings*, 583 U.S. at 299; 8 U.S.C. § 1101(a)(18) (defining immigration officer); 8 U.S.C. § 1101(b)(4) (defining immigration judge); *see also dos Santos v. Noem*, No. 1:25-cv-12052-JEK, 2025 WL 2370988, at *8 n.11 (D. Mass. Aug. 14, 2025) (distinguishing between statutory definition of "immigration officer" and "immigration judge" to conclude that petitioner was not detained under § 1225(b)(1)(B)(ii) after he received "a positive credible fear finding" from an immigration officer and was placed in standard removal proceedings before an immigration judge); *cf. Kumar*, 2026 WL 3120731 at *3 (finding that the Board of Immigration Appeals did not constitute an "'immigration officer' who 'consider[s]' [Petitioner's] application under [§ 1225(b)(1)(B)(ii)]") (quoting *Jennings*, 583 U.S. at 299).

In support of the opposite conclusion, Respondents rely on the BIA decision in *Matter of M-S-*, 27 I & N Dec. 509 (A.G. 2019), as well the opinions of two district courts applying *Matter of M-S-*: *Brito-Goncalvez v. Field Off. Dir.*, 2026 WL 1077448, at *6-9 (S.D. Ohio Apr. 21, 2026); *Pambukhychyan v. U.S. Immig. & Customs Enf't*, 2026 WL 980250, at *7-10 (W.D. La. Mar. 23, 2026), *report and recommendation adopted*, No. CV 26-0136, 2026 WL 978973 (W.D. La. Apr. 10, 2026). For the reasons explained in *Singh*, 2026 WL 1880217, at *3, these cases are unpersuasive. *Matter of M-S-* incorrectly interpreted *Jennings* to hold "that section 235(b)(1) 'mandate[s] detention throughout the completion of [removal] proceedings' unless the alien is paroled." 27 I. & N. Dec. 509, 510 (2019). But *Jennings* only states that detention is mandatory "until immigration officers have finished 'consider[ing]' the application for asylum." 583 U.S. at 299. Likewise, *Brito-Goncalvez* and *Pambukhychyan* followed *Matter of M-S-,* holding that detention under § 1225(b)(1)(B)(ii) applies during the "full removal proceedings under [8 U.S.C.

§ 1229a],” *Brito-Goncalvez*, 2026 WL 1077448, at *2, including while the noncitizen’s asylum appeal is pending before the BIA. *Pambukhychyan*, 2026 WL 980250, at *3. However, none of these authorities apparently considered that the petitioners were no longer under “further consideration” by an asylum officer but instead were in standard removal proceedings before an immigration judge. 8 U.S.C. § 1225(b)(1)(B)(ii).

Accordingly, the Court concludes that Petitioner is detained under § 1226(a), not § 1225(b)(1)(B)(ii).

B. Due Process

Having determined that Petitioner is not subject to mandatory detention, Petitioner did not receive the process to which he was entitled. Due process entitles noncitizens detained under § 1226(a) to an individualized bond hearing before an immigration judge to determine whether they present a flight risk or danger to the community. *See Lopez-Campos v. Raycraft*, 175 F.4th 713, 732–34 (6th Cir. 2026); 8 U.S.C. § 1226(a); 8 C.F.R. § 1236.1(c)(8), (d)(1). Respondents’ arguments to the contrary presuppose that Petitioner is “detained under § 1225(b)(1)(B)(ii)” and are therefore inapposite. [*See* DE 5 at 23 (“Petitioner wants a bond hearing as someone detained under 8 U.S.C. § 1226(a) would receive, but that same process isn’t available to someone detained under § 1225(b)(1)(B)(ii).”)].

Because the government has not provided Petitioner with an individualized bond hearing, his continued detention is unlawful. *See Mann v. Lewis*, No. 4:26-CV-187-RGJ, 2026 WL 935842, at *4 (W.D. Ky. Apr. 7, 2026) (addressing *Mathews v. Eldridge*, 424 U.S. 319 (1976), factors and concluding that government’s re-detention of asylum applicant, without providing a hearing to determine that he was a flight risk or a danger to the community pursuant to § 1226(a), was in “violation of the Due Process Clause and the INA”).

C. Remedy

The proper remedy for unlawful executive detention is generally release. *See Orellana v. Noem*, 807 F. Supp. 3d 745, 754 (W.D. Ky. 2025) ("[C]ourts across the country have ordered the release of individuals stemming from ICE's illegal detention."); *Minarcaja Concha v. Lyons*, 818 F. Supp. 3d 367, 390 (E.D.N.Y. 2026) ("Release from detention is the typical remedy for unlawful executive detention.") (cleaned up); *Roble v. Bondi*, 803 F. Supp. 3d 766, 774 (D. Minn. 2025) (ordering petitioner's "release from custody as a remedy for ICE's illegal re-detention"). *See also Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 107 (2020) ("Habeas has traditionally been a means to secure release from unlawful detention.").

Release is not the only remedy, however. Historically, "common-law habeas corpus was, above all, an adaptable remedy," whose "precise application and scope changed depending upon the circumstances." *Boumediene v. Bush*, 553 U.S. 723, 779 (2008). The writ's "most extensive" role at common law was "in cases of pretrial and noncriminal detention, where there had been little or no previous judicial review of the cause for detention." *Id.* at 780. In *Boumediene*, the Supreme Court made clear that, "when the judicial power to issue habeas corpus properly is invoked the judicial officer must have adequate authority . . . to formulate and issue appropriate orders for relief, including, if necessary, an order directing the prisoner's release." *Id.* at 787.

The Court concludes that release is necessary because Petitioner is currently being held in mandatory detention and has been for over five months. As such, Petitioner's continued dentition, however transitory, is unlawful. Accordingly, the Court will order Petitioner's release. This is in line with the remedies fashioned by other district courts in this circuit. *See, e.g.*, *Salinas v. Woosley*, No. 4:25-CV-121-DJH, 2025 WL 3243837, at *5 (W.D. Ky. Nov. 20, 2025) (ordering release and requiring a bond hearing before further re-detention); *Monge-Nunez v. Ladwig*, No. 2:25-CV-

03043-TLP-ATC, 2025 WL 3565348, at *7 (W.D. Tenn. Dec. 12, 2025) (ordering release pending a bond hearing). Moreover, "[i]n recent months, courts across the country have ordered the release of detainees in similar situations" where the government has articulated no legitimate interest in detaining individuals who are neither flight risks nor dangers to the community. *Moctezuma v. Henkey*, No. 1:25-CV-00741-BLW, 2026 WL 18809, at *5 (D. Idaho Jan. 2, 2026) (ordering immediate release and collecting cases across jurisdictions); *Cruz-Reyes v. Bondi*, 5:26-CV-60, 2026 WL 332315, at *13 (S.D. Tex. Feb. 3, 2026) ("[D]ue process concerns weigh heavily in favor of granting immediate release."); *Santiago v. Noem*, No. EP-25-CV-361, 2025 WL 2792588, at *13–14 (W.D. Tex. Oct. 2, 2025) (collecting cases and finding that "immediate release appropriately remedies Respondents' violation of [Petitioner's] due process rights through her continued detention.").

However, the Court will not require Respondents to hold a bond hearing following Petitioner's release. *But cf. Monge-Nunez*, 2025 WL 3565348, at *7. Nevertheless, should Respondents decide to re-detain Petitioner, absent a material change in circumstances, they must provide Petitioner with a bond hearing pursuant to Section 1226(a).

## III. CONCLUSION

For the reasons set forth above, the Court **GRANTS** the Petition for Writ of Habeas Corpus [DE 1] and **ORDERS** the following:

(1) Respondents are directed to release Petitioner immediately because of the unlawful detention in violation of his due process rights; and

(2) the United States must certify compliance with the Court's order by a filing on the docket **by November 4, 2026**.

**IT IS FURTHER ORDERED** that Petitioner's motion for expedited consideration [DE

10] is **GRANTED**.

Rebecca Grady Jennings, District Judge
United States District Court

November 4, 2026